## No. 3616.

MRS. LOUISA FRENCH, Executrix, *v.* JOHN M. BACH et al.

26   731
112   480

The ruling in this case of the court *a qua*, permitting the introduction of parol proof that one McMichael never owned the property in dispute, and that Spiller did, was clearly wrong.

McMichael having sold the property in dispute to French, and received one thousand dollars cash in consideration for it, executed his bond for title, and French, taking possession of it, expended eight hundred dollars in repairs. There was no obligation resting upon McMichael further than to execute a deed when called upon. The property belonged to French to all intents and purposes, and whether McMichael objected or not to the subsequent probate sale of the property, as part of the estate of one Nancy Spiller, did not in any manner affect the rights of French. Norris bought the property as belonging to said estate, and Bach bought it from Norris. After these transactions, French sued McMichael on his title bond, and cited both Bach and Norris as parties;

Held—That Bach had made himself liable, under the circumstances of the case, for the value of the rent of the property from the date of the service of the citation upon him in the suit of French against McMichael.

APPEAL from the Sixth Judicial District Court, parish of Tangipahoa. *E. D. Craig*, judge *pro tem.*, in the place of the district judge, recused. *S. D. Ellis* and *John W. Addison*, for plaintiff and appellee. *G. W. H. Marr, Wm. Duncan* and *L. E. Simonds*, for defendant and appellant.

TALIAFERRO, J. This is a petitory action to recover a house and lot lying in Amite City, and rent for its use and enjoyment during the alleged illegal possession and detention of the same by the defendants.

The answer specially denies ownership of the property in plaintiff, and avers title to the same in John M. Bach, derived from the succession of Nancy Spiller, through one Norris, the purchaser at the succession sale of the effects of Nancy Spiller, in July, 1863; the defendant Bach having purchased the property from Norris on the twenty-fourth of July, 1866. There was judgment for the plaintiff, decreeing the property to belong to the estate of Anson J. French, deceased, but refusing the plaintiff's demand for rents. The defendant Bach appealed. Buttman, the other defendant, was a mere nominal party. In this court the plaintiff prays that the judgment of the lower court be amended by allowing the rent claimed in her petition.

The plaintiff, we think, presents a perfect title, commencing with the patent to the land from the State of Louisiana to one George Richardson, dated nineteenth December, 1854, and followed by the successive conveyances of the property down to the completion of the title in Anson J. French, by deed executed under a judgment and decree of court, by the executrix of G. P. McMichael on the —— day of July, 1871.

The defendant shows that he bought from Norris in July, 18 6, and that Norris bought at the succession sale of Nancy Spiller a short time previous. There is no showing as to how or when Nancy Spiller ac-

quired title to the property. The chain of title exhibited by the plaintiff is unbroken, and there is no evidence that Nancy Spiller acquired any right from either of the former owners. McMichael, the vendor of French, bought the property at the succession sale of Flynn, and executed a bond for title with Levi Spiller as surety. This bond, containing the usual stipulations of instruments of that kind, closes with this recital : " There is some probate proceedings to be had in regard to the succession of Mrs. Nancy Starns, wife of the said Levi Spiller, lately deceased, which the said Spiller promises to urge and perfect as soon as possible, with the free and full concurrence of said McMichael."

We find nothing in the record that explains this clause in the bond. An effort was made to introduce parol proof that McMichael never owned the property, and that Spiller did ; and to the ruling of the court admitting witnesses to establish that statement, the plaintiff reserved several bills of exceptions. The ruling was clearly wrong, the testimony being exclusively parol, was inadmissible to destroy McMichael's title and establish title in Spiller, who had no vestige of title. It appears from a perusal of the record that Anson J. French, a resident of New Orleans, bought the property in question on the third of March, 1862, from G. P. McMichael, who, it has been seen, purchased it at a probate sale of the succession of Flynn. French paid McMichael one thousand dollars for the property, as recited in the bond. Under this act French took possession of the property and put repairs upon it to the value of eight hundred dollars. Soon afterwards French returned to New Orleans and remained there until after the end of the war in 1865. He left an agent in possession, who soon afterwards, upon the capture of New Orleans by the United States army, returned to the city, leaving the property with no one to take care of it. Upon the return of French after the war, he found the property in possession of the defendants—that on the twenty-eighth of July, 1863, it had been exposed to sale as belonging to the estate of Nancy Spiller, deceased, and that G. W. Norris had bought it for eight hundred dollars in Confederate money. French thereupon brought suit upon the bond against McMichael, and after the decease of the latter soon after, he obtained a judgment against his executrix, decreeing that the estate of McMichael, through his executrix, should perfect the title to the property in the estate of French, who also died pending these proceedings. To this suit Bach and Norris were both made parties. It is objected that the bond is not translative of property. It is further objected by them that McMichael was present at the sale in July, 1863, and made no opposition to the sale, and therefore the plaintiff was estopped from afterwards claiming the property. We do not see the force of these objections. McMichael had sold the property to French

in 1862, received one thousand dollars cash as the consideration for it, executed his bond for title, and French went into possession of it and expended eight hundred dollars upon it in repairs. There was no obligation resting upon McMichael further than to execute a deed when called upon. The property belonged to French to all intents and purposes, and whether McMichael objected to the sale or not, did not in any manner affect the rights of French.

We must regard the proceeding set up by the defendant as a probate sale of the property in dispute, in July, 1863, pretended to belong to the estate of Nancy Spiller as a mere nullity and without any legal effect. Nothing in the record, as before remarked, shows that the property ever was the property of Nancy Spiller. It is shown, moreover, that the price of adjudication was paid in Confederate money. The sale of the property of another is null, Civil Code, article ——. This alleged sale, with all its surroundings, we cannot regard as having been made in good faith, and therefore that it is not covered by the immunity granted by article 149 of the constitution of this State. Norris having acquired no title, could transfer none to Bach, his vendee. Besides the bills of exceptions taken by the plaintiff to the admission of parol evidence to destroy McMichael's title, and to establish title in Spiller, which we have already considered, there are several other bills of exceptions by both parties in the record, but we do not deem it important in deciding this case to pass upon them.

It remains to consider the question of rent. The Civil Code, article 503, [495] declares that " he is a *bona fide* possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a *bona fide* possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner." It is shown that at the sale made in July, 1863, doubts were openly expressed among the persons present of the validity of the sale, on the ground that the property belonged to French. One or two bidders ceased bidding through fear of the title being defective. The sheriff who made the sale testified that he was impressed with the belief that Bach and Norris were in partnership in the purchase, and that Bach afterwards told him so. In March, 1866, French sued McMichael on his title bond, and cited both Bach and Norris as parties. After this judicial notice of French's title, Bach bought the property from Norris in July following for $500, far below the price paid for it by French, besides the value of the improvements placed by him on it after his purchase. No depreciation in the value of the property is shown to have taken place between the time French bought it, and the date at which Bach purchased it from Norris. It is to be noticed, too,

that when Bach was sued for the property he did not call Norris in warranty; nor did he on the trial testify against the charge made against him of bad faith. We think the defendant Bach has rendered himself liable for the value of the rent of the property from the date of service of the citation upon him in the suit of French against Mc-Michael, to wit: ninth of April, 1866, at the rate of twenty dollars per month, that being the rate which Buttman was paying Bach in the year A. D. 1871, and had previously been paying him since July, 1869.

It is therefore ordered, adjudged and decreed, that the judgment of the district court, in so far as it fails to award the plaintiff rent for the detention and use of the property in litigation, and reserves to the defendant Bach the right to recover for improvements, if any, put by him on the property, be annulled and reversed. It is now ordered that the plaintiff recover from the defendant, John M. Bach, rent for the property in controversy at the rate of twenty dollars per month from the ninth day of April, A. D. 1866, (eighteen hundred and sixty-six), until full possession of the property aforesaid be delivered to the plaintiff. It is further ordered, that as thus altered and amended, the judgment of the lower court be affirmed with costs.