(50 South. 835.)

No. 17,845.

STATE v. SATCHER et al.

(Nov. 29, 1909.)

1. CRIMINAL LAW (§ 1151*)—APPEAL—REVIEW —DENIAL OF CONTINUANCE.

The matter of the continuance of a criminal case, whether on the ground that counsel have not had time to prepare the defense, or on account of the absence of witnesses, is largely within the discretion of the trial judge, and his ruling will not ordinarily be reversed, unless manifestly arbitrary and prejudicial to the legal rights of the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3045-3049; Dec. Dig. § 1151.*]

2. CRIMINAL LAW (§ 730*)—TRIAL—REMARKS OF COUNSEL.

Remarks made by a prosecuting officer, by way of argument, and of necessary answers, in reply to statements, or remarks, made by counsel for defendant, though otherwise improper, afford no ground for setting aside a verdict, particularly when it appears that the jury were instructed to disregard them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693; Dec. Dig. § 730.*]

3. CRIMINAL LAW (§ 1172*)—TRIAL—REMARKS OF JUDGE.

Where the trial judge, complying with a request for instructions upon the subject, correctly informs the jury as to the penalty following a verdict of guilty, without capital punishment, and then adds, "Under the law of commutation for good time, under a verdict of guilty, without capital punishment, the term of imprisonment, claimed by some, and may be the rule, would amount to a period of 15 years"—there is no such error, to the prejudice of the defendant, found guilty, without capital punishment, as to call for the setting aside of the verdict.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1172.*]

(Syllabus by the Court.)

Appeal from Fifth Judicial District Court, Parish of Jackson; George Wear, Judge.

Ed. Satcher and Frank McDay were convicted of manslaughter, and appeal. Affirmed.

Price & Price and Grisham, Oglesby & Stennis, for appellants. Walter Guion, Atty. Gen., and C. P. Thornhill, Dist. Atty. (J. E. Clayton and R. G. Pleasant, of counsel), for the State.

MONROE, J. Defendants, having been prosecuted for murder and convicted of manslaughter, present their case to·this court by means of the bills of exception, which will now be considered, to wit:

Bill No. 1. To the refusal of the court to grant a continuance.

This bill recites that, when on Wednesday, July 21, 1909, the case was called for trial, counsel for defendants announced that they were not ready for trial, for the reasons that F. W. Price,·one of the counsel, was not employed until the night of Monday, July 19th, and that the employment of the other counsel, O. M. Grisham, had not been perfected until Tuesday, July 20th, and that they had not had time to prepare themselves; that the indictment. had been returned "out of term time, on last week";· that defendants were in jail, without money, and depended on their friends to find the necessary funds and employ counsel, and that due diligence had been used; that defendants had caused summonses to issue on July 19th for two witnesses— Fuller McIntosh, a white man, and Charley Smith, colored, and that the witnesses had not been served; "that they were absent, but could be had by next term of court;" that their evidence was material and necessary; and that defendants could not safely go to trial without it, "as more particularly shown by the motion for continuance, made part of the bill."

The bill further recites that the court overruled the motion for continuance, with the proviso that the state should admit that the witnesses, if present, would swear to what was set up in the motion, to which the state agreed, but the defendants further objected that they were entitled to the presence of the witnesses, if they could be had, which objection was also overruled.

The motion for continuance alleges that defendants' counsel have not prepared, and have not had time to prepare, for trial; that the

indictment was returned on July 13th, the court not being then in session; that on Monday, July 19th, when the court opened for its regular session, defendants were arraigned, and that O. M. Grisham, one of their present counsel, represented them for that purpose, but stated that "he had not been employed in the case," which was then set down for July 21st; that from the time of their indictment until that of their arraignment they were in jail, in Vernon, 10 miles from a railroad, without money to employ counsel, and depending on the court to appoint counsel, or upon their relatives or friends to employ counsel; that on Monday night, July 19th, some of their relatives and friends employed F. W. Price, who lives in Ruston, in Lincoln parish, and that on Tuesday, July 20th, O. M. Grisham, who lives in Winnfield, was employed by other relatives and friends; that their said attorneys have not had time to prepare the case for trial; and that they have a good and valid defense.

The motion further alleges that defendants cannot safely go to trial on account of the absence of Fuller McIntosh, Charley Smith, and Will Goodwin, for whom they caused summonses to issue on July 19th, but who have not been summoned, and are not present; that each of said witnesses is necessary to the proper defense of the case; that they reside in the parish of Jackson; that they are not absent through any fault or contrivance of defendants, and that "they can, and will, be had present at the next term of the court." The motion further sets forth certain facts to which it is alleged that the witnesses will testify, and alleges that such testimony would be admissible and material. The motion is sworn to by the defendants, and we find in the record affidavits in support of it subscribed by the defendants' counsel, as follows, to wit: by O. M. Grisham, to the effect that he was employed to assist in the defense on Tuesday, July 20th; that, when he appeared

for defendants on July 19th, it was only for the purposes of their arraignment, and for the reason that some of their relatives had spoken to him about his employment in the case, and it was expected he would be employed during that day; that since his employment in the case he has not had any time to prepare the case for trial, only having been employed on yesterday (Tuesday, July 20th), and has not prepared the case for trial; that the affidavit is not made for the purpose of delay, but to the end that substantial justice may be done. By F. W. Price, to the effect that "he was only employed * * * late Monday night, July 19th, at Ruston, Lincoln parish"; that since his employment he has not had time to prepare, and has not prepared, for the trial; and that the motion for continuance and the affidavit are not made for delay.

The judge a quo gives the following as his reasons for refusing to grant the continuance, viz.:

"The defendants were charged with having on April 3, 1909, murdered William Johnson, a negro, at Elmo, in Jackson parish, La., which is about eight miles from Vernon, and about eight miles from Ruston. They immediately fled from the scene of the killing, and went to Texas, but afterwards came back to Caddo Lake, in Caddo parish, where they were arrested, and afterwards incarcerated in jail, at Vernon, on June 23, 1909. Upon the finding of the coroner's jury on April 4, 1909, warrants were issued for the arrest of the defendants. The grand jury returned a true bill for murder against them, which was filed on July 13, 1909, and on the same day the sheriff served a copy of the indictment and of the venire on the defendants. The defendants were negroes, and lived on the plantation of Mr. Nat. Clinton, a white man, of means and influence, who it appeared, had from the very beginning interested himself in preparing their defense. Practically all of the witnesses lived on Mr. Clinton's place and all were negroes, except McIntosh and Ress. The trial disclosed a most thoroughly prepared defense. Mr. O. M. Grisham, one of the attorneys for the defendants, represented them in the arraignment on Monday, July 19, 1909; and in the argument on the motion for continuance he admitted that the question of his employment had been considered between himself, the defendants, and their friends during the previous week. It also developed during the trial that Mr. O. M. Grisham had gone to Elmo, the scene of the kill-

ing, during the week previous to the trial, and had there interviewed some of the most important witnesses for both the state and the defense. Mr. F. W. Price, another of the three attorneys for the defendants, admitted that he had been consulted the week previous with a view to employment by both the prosecution and the defense. The issues were very narrow, and the defendants were ably defended by experienced counsel, who during the trial showed great familiarity with the details of the defense. It also developed during the argument of the motion for continuance that the delay in employing counsel for defendants was not due to inability to do so, but to the desire to employ only the ablest attorneys, and there seemed to be some difference of opinion as to the choice of one attorney who was under consideration.

"Now, as to the absent witnesses, Fuller McIntosh and Charles Smith, the records of the court show that Fuller McIntosh has now pending against him four indictments for 'boot legging' whisky to those negroes and other persons on the night of the killing. He is a refugee from justice. His family have left the parish, and his whereabouts are unknown to the officers of the court. The district attorney admitted that, if he were present, he would swear to all that defendants had set up in the affidavit attached to the motion for continuance. It developed on the trial that he was not at the scene of the tragedy, but that he was at home when William Johnson was killed. As to the absent witness, Charles Smith, he is a transient negro railroad hand. He testified before the coroner's inquest, and his testimony was on file in court. It was not as strong for the defendants as was the statement set out in the affidavit, which the state admitted he would swear to if present. But, in addition to all the above, several other witnesses for the defendants swore to every material fact set up in the affidavits attached to the motion for continuance, and there were several other eyewitnesses to the killing at court during the entire trial who were not put on the witness stand by either the state or the defendants. After the conclusion of the trial, the court is convinced that the defendants put their entire defense before the jury, that they suffered no injury by the overruling of the motion for continuance, and that they had a fair and impartial trial."

In the motion for new trial filed by the defendants, it is alleged that the court erred in not granting them a continuance on the motion and for the reasons contained therein, but there is no special reference to the matters set up in the motion, nor does there appear to have been any attempt to show by testimony that defendants sustained any injury by reasons of lack of preparation by their counsel or of the absence of the witnesses, McIntosh and Smith, or that they gave the proper addresses at which those witnesses could, and should, have been found, or that the witnesses were then obtainable, or could thereafter be obtained.

The crime with which defendants are charged is said to have been committed on April 3, 1909. They were arrested June 23d. and indicted July 13th, and their case was not set down for trial until July 21st following. It was their privilege immediately on being arrested to request the court to assign them such counsel as they desired (Rev. St. § 992), but the court was under no obligation to make the assignment until the request had been made. State v. Romero, 5 La. Ann. 24.

If, being unable to employ counsel, they had delayed requesting that counsel be assigned them by the court until the day fixed for the trial, they could not have pretended that they had exercised due diligence, or any diligence.

Upon the other hand, if, being able to employ counsel, they delayed doing so until the day fixed for trial, the same situation is presented; i. e., they could not pretend that they had exercised proper diligence, and it will be remembered in that connection that the trial judge says:

"It also developed during the argument of the motion for continuance that the delay in employing counsel for defendants was not due to inability to do so, but to the desire to employ only the ablest attorneys, and there seemed to be some difference of opinion as to the choice of one of the attorneys who was under consideration."

Considering the matter, then, either from the point of view that defendants were unable to employ counsel and were entitled, upon their request to that effect, to have counsel appointed to represent them, or from the point of view that they were able, whether through their relatives or otherwise, to employ counsel, the fact that until the night of July 19th no counsel had been regularly

assigned or employed to take charge of their defense was due entirely to their own inaction, and (conceding for the moment that the counsel then employed did not have time to prepare their defense) the question which presents' itself is whether a defendant in a criminal prosecution ought to be allowed by his own deliberate action to obstruct the administration of criminal justice, and to force a postponement of the trial of a case which ought to be tried. Considering the law and the rules of practice by which proceedings in court of justice are generally governed, the question thus propounded would ordinarily be answered in the negative. The defendant in such prosecution ' may, if he choose, dispense with counsel altogether, and undertake to conduct his own defense, but he certainly can have no right after neglecting or refusing to take legal advice up to the moment his case is called for trial, or within a short time before, to force a continuance on the ground that the counsel whom he then concludes to employ, or to accept, has not had time to prepare himself.

The state is, however, equally interested that those who are innocent shall not, as that those who are guilty shall, be punished for crime, and, by consensus of judicial opinion, a broad discretion is vested in the courts of the first instance, to the end that no citizen, however neglectful he may be of his own interest, shall be denied the opportunity, when prosecuted, of presenting his defense in a fair and impartial trial. The exercise of such discretion should however, be based upon accurate knowledge of the true situation, such as does not, and cannot ordinarily, reach the courts of last resort, and hence in such matters it is only where the ruling of the trial judge would work an injustice which is manifest, or, in other words, where the discretion is abused and the ruling arbitrary, that the appellate court will interfere. State v. Wilson, 33 La. Ann. 261;

State v. McCarthy, 44 La. Ann. 323, 10 South. 673; State v. Bridges, 109 La. 530, 33 South. 589; State v. Leary, 111 La. 301, 35 South. 559; State v. Golden, 113 La. 800, 37 South. 757.

In the instant case we may use the language of our predecessors in this court in one of the cases above cited, to wit:

"We cannot for a moment suppose that had it been shown, when the motion for new trial was heard, that the continuance, which was asked and refused on the day of the trial, should have been allowed, or that the finding of the jury was contrary to law and evidence, and, for either cause, that the accused did not have a fair and legal trial, the judge a quo would not, even on his own motion, have set aside the verdict and granted the prisoner a new trial. We must, and do, believe that, in acting as he has done, he has discharged his duties conscientiously and legally, and has done no injustice to the defendant." State v. Wilson, supra.

It may be remarked in conclusion on the subject of this bill that there is no attempt, even in the briefs filed on behalf of defendants, to controvert the statement of the trial judge to the effect that the witness McIntosh was a fugitive from justice and was not present at the homicide, and that the witness Clark was a transient railroad laborer, and, as we have already stated, there was no attempt on the hearing of the motion for new trial to show that the witnesses named could have been found then or thereafter, and the statement of the counsel in their brief that the sheriff had made no returns upon subpœnas issued to said witnesses is dehors the record; the statements in the motion for continuance and bill of exception being merely that the subpœnas had been issued and had not been served non constat, but that the witnesses were not to be found at the addresses given by the defendants. Upon the whole, we are of opinion that the points presented by the bill under consideration were not well taken.

Bill No. 2 was taken to the following remark, made by the district attorney in the course of his argument, viz.:

"I want to say to you that it seems to me that human life is wonderfully cheap in Jackson parish, especially if that human life is negro life."

Counsel for defendants objected, and "asked the court to have counsel confine his argument to the case, and took this, their bill of exception, and, having presented it to the counsel for the state, prayed the court to sign the same."

The district attorney added the statement:

"The language used by me * * * was in reply to Mr. F. W. Price's argument to the jury * * * that the killing of a bad negro was a benefit to the community, and that the killing of some negroes, killed at a church in Jackson parish cleared the atmosphere."

The statement of the judge is:

"The court instructed the jury to disregard and not consider any personal opinion that may have been advanced by either counsel, but simply to consider the testimony, as coming from the witnesses."

Bill No. 3 was taken to the remark:

"If a negro kills a negro, he usually graduates by killing a white man."

To which there was the same objection as in bill No. 2, followed by the same statement by the district attorney and the same ruling by the judge.

Bill No. 4 was taken to the remark:

"I pledge you, upon my honor and in the presence of high heaven, that I will never contend for the conviction of a man whom I believe to be innocent, and that belief in this case is based on the law and the evidence."

A remark which the district attorney, in his addenda to the bill, says was made "in reply to the argument of O. M. Grisham, attorney for defendants," that the "blood thirsty attorneys for the state had left nothing undone to break the necks of, or to consign, the defendants to the state penitentiary."

The bill shows that the court "instructed the jury to disregard the argument of counsel, as to his personal belief in the matter, and instructed the counsel to refrain from expressing his personal opinion to the jury."

The remarks of the district attorney recited in the bills were legitimate answers to those attributed to defendants' counsel, and the court having instructed the jury, as requested, to disregard such remarks, as coming from either side, we find no sufficient reason for assuming that its instructions were not heeded.

The bills present no grounds for reversal. State v. Romero, 117 La. 1006, 42 South. 482; State v. Young, 114 La. 686, 38 South. 517; State v. Jones, 51 La. Ann. 106, 24 South. 594. "It has been broadly stated that a party can have no just grounds for complaint on account of remarks, improper in themselves, which have been necessitated by like remarks from the other side." 2 Enc. of Pl. & Pr. pp. 731, 732.

Bill No. 5 shows that, the jury having come into court and asked for further instructions upon the question of amount of punishment attached to each verdict they might render, the judge, after correctly instructing them as to the punishment attached to murder, murder without capital punishment, and manslaughter, added, further, "under the law of commutation for good time service, under a verdict of 'guilty, without capital punishment,' the term of imprisonment is claimed by some, and may be the rule, would amount to a period of fifteen years." He further added that, as to the sentence, that is a matter with which the jury has nothing to do, and "that whatever verdict they did find would be supported by the law and the evidence."

Thereupon counsel for defendants objected to the statement made by the judge to the jury, as set out above, and took this their bill of exception.

Defendants, charged with murder, were found guilty without capital punishment, and were sentenced to imprisonment at hard labor for life, and to the payment of costs,

to which is added: "This judgment is subject to commutation for good time service according to law." Section 8, Act No. 112, p. 155, of 1890, as amended by section 3, Act No. 160, p. 305, of 1902, provides:

"That whenever any person has been * * * sentenced to imprisonment for life, and who has served in the penitentiary 15 years of said sentence, and who has, during the 15 years, so conducted himself as to merit the approval of the board of control, he may apply for commutation of his sentence, and, upon the approval of said board of control, the same shall be forwarded to the board of pardons, and, upon their approval, the same shall be forwarded to the Governor; provided, that no more than one convict, out of every five, confined to life imprisonment, shall be commuted in any one year; provided, that, in case of convicts under life sentence, admitted to the special class referred to in section 2, single commutation, given in section 2, may be deducted from the 15 years service and, to that extent, shorten the time in which he or she may apply for commutation under this section."

The meaning of the explanation given by the judge plainly was that, whilst the sentence upon a verdict of guilty of murder without capital punishment would be imprisonment at hard labor for life, the party so sentenced might, by good behavior, have his term of imprisonment shortened to 15 years; and we are unable to discover in what way the defendants were thereby prejudiced, the fact being, that under the last proviso of Act 160 of 1902 (above quoted), the term of imprisonment may be made even less than 15 years.

Finding no reversible error in the rulings complained of, the verdict and judgment appealed from are affirmed.