(64 South. 481.)

No. 20,139.

STATE v. JACKSON.

(Dec. 1, 1913. Rehearing Denied March 5, 1914.)

*(Syllabus by the Court.)*

1. CONSTITUTIONAL LAW (§ 74*) — APPOINTMENT OF JURY COMMISSIONERS — JUDICIAL FUNCTION.

While it is true that article 96 of the Constitution provides that judges shall perform only judicial functions "except as herein provided," the Constitution also gives to the Legislature the power to provide for the drawing of juries for the trial of criminal and civil cases. The Legislature has given to the judges of the parishes, Orleans parish excepted, the right to appoint the jury commissioners, and the exercise of this authority by the judges cannot be said to be such an executive function as to violate article 96 of the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 124; Dec. Dig. § 74.*]

2. CONSTITUTIONAL LAW (§ 74*) — APPOINTMENT OF JURY COMMISSIONERS — JUDICIAL FUNCTION.

The fact that the Legislature delegated to the Governor the right to appoint the jury commissioners for Orleans parish did not necessarily impress the power of appointing with an executive character; for while the Legislature undoubtedly had the right to give the Governor this power, still the selection of a jury commission is more in the nature of a judicial function, as it is intimately connected with the organization of the court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 124; Dec. Dig. § 74.*]

3. CRIMINAL LAW (§§ 594, 598, 1151*)—APPEAL—DISCRETIONARY RULING—REFUSAL OF CONTINUANCE.

The question of whether or not a continuance shall be granted on the ground that an important witness is absent is a matter largely within the discretion of the court, and his refusal to grant a continuance will not be interfered with unless he has clearly gone beyond the limits of his discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1321, 1322, 1332, 1335–1341, 3045–3049; Dec. Dig. §§ 594, 598, 1151.*]

4. SUNDAY (§ 30*)—CRIMINAL PROCEEDINGS—RENDITION OF VERDICT.

There is no legal objection to the rendition of a verdict on a Sunday, where the case has been given to the jury prior to that time.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 73–85; Dec. Dig. § 30.*]

5. CRIMINAL LAW (§ 1129*)—APPEAL—ASSIGNMENTS OF ERROR—TIME OF FILING.

Assignment of errors relating merely to form and not substance will not be considered unless filed within 10 days of the filing of the transcript in this court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2954–2964; Dec. Dig. § 1129.*]

6. ERRORS ASSIGNED.

An examination of the record shows that all of the essential formalities were followed, and that the defendant has no cause of complaint.

Appeal from Thirtieth Judicial District Court, Parish of La Salle; George Wear, Sr., Judge.

George Jackson was convicted of manslaughter, and appeals. Affirmed.

See, also, 132 La. 946, 61 South. 987.

Wear & Jones, of Jena, for appellant. R. G. Pleasant, Atty. Gen., and S. L. Richey, of Jena, Dist. Atty. (G. A. Gondran, of Donaldsonville, of counsel), for the State.

BREAUX, C. J. The accused was tried for murder, found guilty of manslaughter, and condemned to a term of 20 years in the penitentiary.

[1, 2] The first ground of complaint of the accused on appeal in a motion to quash is directed against the authority of the jury commission. The contention is that the jury commission was appointed by the district judge without authority; that the appointment is an executive function and not judicial; that no functions can be attached to the courts except such as are judicial.

If it be conceded that the function of appointing the jury commission is executive it would be an easy matter to arrive at the conclusion that the judge cannot appoint a jury commission.

We are not of the opinion that it was the exercise of an executive function on the part of the judge who appointed the jury commission. It was necessarily a judicial function. The jury, grand and petit, became a

part of the court. The court appoints the jury commission to the end of completing its organization as a court.

The Constitution ordains that the functions of the judge shall be judicial "except as herein provided." To the General Assembly under the Constitution was delegated the authority of providing for the drawing of juries for the trial of civil and criminal cases; and, while it is true that article 96 of the Constitution provides that judges shall perform only judicial functions "except as herein provided," it is herein provided, not only that the General Assembly shall have the power before stated, but that it shall have the power of providing the mode of appointment or election of all officers. Jury commissioners hold under a statute, and act as officers.

Learned counsel cite with confidence the decision in State v. Pierre, 121 La. 465, 46 South. 574. In this decision the court must have foreseen that possibly the question would arise in the country parishes from a different point of view. In other words, that in the country parishes it would be contended that the function is not judicial, while in the city it was contended that the function was not executive. There is, it must be owned, slight, but not irreconcilable, inconsistency. In the city of New Orleans the appointment of the jury commission is made by the executive, and considered an executive act. In the country parishes it is made by the judge, and considered a judicial act.

The court did not, in the case referred to, decide that the function was exclusively executive in the city, but said:

"We are not dealing with an act of the General Assembly authorizing or directing the judge to appoint the jury commission on the ground that such duty thrown on the courts is in contravention of article 96 of the Constitution. That question is entirely distinct from the one submitted to us at this time."

The appointment in the city of New Orleans does not necessarily suggest the impossibility of the power of appointment in the country. New Orleans is under one law on the subject, and the country, another. The appointment of jury commissioners in the country is a judicial function fully authorized by the General Assembly. Courts are not always limited strictly to the exercise of judicial functions. Their duty is not always with technical precision "to judge." This has been the view entertained in this state for years. No good reason suggests itself at this late date to take a different view of the question than heretofore held.

The General Assembly has the right to prescribe the mode of appointment of all officers created by it. The office of jury commissioner was created by the General Assembly. Article 71 of the Constitution.

[3] The next objection is to the court's refusal to grant a continuance; grounds for a continuance were alleged.

On June 18, 1913, the accused moved for a continuance on the ground: that Cecil Roberson, the witness, was temporarily absent. That he was present at the prior term. That by this witness he expected to prove that three days before the homicide he was assaulted by the deceased. That he escaped death by retreating. That the deceased had made a threat against him; and other allegations to the same effect.

The court overruled the motion.

Thereupon defendant through counsel presented a bill of exceptions to the court's ruling, in which he reiterated all the different grounds for wishing the presence of Roberson, the witness. He also stated that after the motion had been filed a consultation was held between the judge and the district attorney. The judge returned in the courtroom and stated that he would overrule the motion. That before the court had ruled counsel expressed the desire to be heard. The court refused to hear argument, or to hear counsel

for the reason, the court said, that the accused had not used due diligence to procure the witness.

Counsel states in the bill of exceptions that he offered to prove that due diligence had been made, but that the court refused to allow proof to be made as proposed by counsel.

In the per curiam, made part of the bill just mentioned, the court states that every effort was made to delay the trial of the case. Motion for a continuance had been made at a previous term of the court on the ground of the absence of the witness Roberson. The court states that on this motion it postponed for three days the trial of the case; at the end of that time it was engaged in the trial of another criminal case, and could not take up the trial of the Jackson Case at that term of court, and that the case necessarily went over. It is also stated, in substance, that at the term of the court at which the case was tried every effort had been exhausted on different grounds to delay the trial. The court, none the less, ruled the defendant to trial. It was then that defendant filed a motion for a continuance.

The court, as one of its reasons for concluding that the presence of the witness was not essential, states that the accused took the stand in his own behalf, and that on his direct examination he said nothing whatever of the previous difficulty with the deceased, nor was any question asked by his counsel touching any difficulty. One of the jurors upon his own motion asked the accused if he and the deceased had had any previous difficulty; the answer was that he had had some difficulty, but it was not very serious. He did add that Roberson told him of threats that the deceased had made against him.

The court reiterated that the whole purpose was delay, and that for that reason he overruled the motion. There was inconsistency also, the court stated, in the affidavit filed in regard to the presence of the accused on previous times in court, in this: That he swore that he was present at court during a prior trial, and at no time he stated that he was absent on a particular day.

It is in place to state that a court of justice should not be compelled to hear argument when the judge is entirely satisfied and knows that nothing can be said that will change his mind. He has the discipline of his court in charge. If he thinks that time is frittered away, he can put an end to the useless waste of time.

Counsel are not without remedy, as is made evident by the bill of exceptions argued, which, however, cannot prevail because not sustained by law or fact. Mention is made of the fact that counsel were not present, as we understand, when they should have been present. Again, the entire day of the 18th of June was taken in arguing a motion. It was overruled, and the state answered that it was ready for the trial. Counsel for the accused objected to going to trial. It was at that time, as before mentioned, that a motion for a continuance was made. As it was late, the court retained the motion and overruled it the next day.

The trial began. Jackson swore that he had a few words with the deceased.

The trial judge has stated other facts brought out by the witness in his own behalf. If the statement of the trial judge be true (and we have no reason to consider it otherwise) the fate of the accused did not depend upon the testimony of the witness Roberson. Again, it is stated that every day from the 1st of June to the 19th there was some mention made about the case in open court, but the defendant never asked or intimated that he desired an attachment to issue for the absent witness, Roberson.

Recurring to the affidavit for the continuance, it should state facts such as will impress the court.

And, again, the accused should have applied himself to obtain the presence of the witness, and should state in what respect he has applied himself to obtain his presence.

The judge is on the ground; he is an observer at first hand; sees what is going on, and has the best opportunity to judge of the motive in applying for a continuance. In the nature of things, the record cannot reproduce all of the facts and particulars which fall within the observation of the trial judge.

Learned counsel rely very much upon the fact that the motion contains all the grounds necessary for a continuance, and especially that it averred that due diligence had been resorted to in order to obtain the presence of the witness Roberson. These declarations in the affidavit do not absolutely conclude the judge, who may have had absolute proof before him that due diligence was not used as alleged. Cases would very seldom be tried if affidavits were as controlling as contended by defendant's counsel. Continuance on account of the absence of witnesses has frequently been discussed in a number of decisions, and the discretion of the court maintained always, unless it was very evident that error had been committed. We refer to the following long line of decisions, each bearing upon the subject: State v. Green, 42 La. Ann. 644, 7 South. 793; State v. Johnson, 36 La. Ann. 853; State v. Clark, 37 La. Ann. 128; State v. Wilson, 33 La. Ann. 262; State v. Primeaux, 39 La. Ann. 673, 2 South. 423; State v. Hillstock, 45 La. Ann. 299, 12 South. 352; State v. Mansfield, 52 La. Ann. 1356, 27 South. 887; State v. Crawford, 41 La. Ann. 589, 6 South. 471; State v. Golden, 113 La. 800, 37 South. 757; State v. McCarthy, 44 La. Ann. 323, 10 South. 673; State v. Duffy, 39 La. Ann. 421, 2 South. 184; State v. Pointdexter, 117 La. 380, 386, 41 South. 688; State v. Clay, 121 La. 530, 46 South. 616; State v. Satcher, 124 La. 1015, 50 South. 835; State v. Gaubert, 49 La. Ann. 1692, 22 South. 930; State v. Perry, 51 La. Ann. 1074, 25 South. 944; State v. Douglas, 116 La. 524, 40 South. 860; State v. Allen, 113 La. 705, 37 South. 614; State v. Murray, 111 La. 688, 35 South. 814.

It must be borne in mind that this was the second application of defendant for a continuance on account of the absence of the witness Roberson. Defendant, applying for a continuance on account of the absence of a witness, must show diligence beyond all question; and, on an application for a second continuance on account of the absence of a witness, extraordinary diligence must be shown. Melbourne v. Florida, 51 Fla. 69, 40 South. 189.

The trial judge has not shown the least disposition to impose upon the rights of the accused.

If the accused violated the law, the time had come to stand his trial and be convicted, or acquitted if he had not violated the law.

There was nothing in the conduct of the trial judge to cause the least suspicion on the part of the accused that any ruling would intentionally be made that would illegally lead to conviction. When a judge acts in good faith and administers the law as he understands it, commits no prejudicial error, his ruling must be sustained.

Among the many other grounds urged, one of them is that the jury, petit and grand, was not legally drawn for the session at which the accused was indicted and at the session at which he was tried in the manner and form required. Conceding for a moment that there was some sort of ground for complaint, he did not prove that fraud was committed, or wrong or prejudicial negligence. The jury law contains curative sections that have application when irregularities are committed not of a grave nature.

[4] Another objection is that the verdict was rendered on Sunday. That objection has no longer any great importance. A verdict

may be agreed upon on Sunday where it has been submitted previous to that day. State v. Keatine, 130 La. 434, 58 South. 139, 39 L. R. A. (N. S.) 844; State v. Vallette, 26 La. Ann. 732; State v. Atkins, 104 La. 37, 28 South. 919; State v. Canty, 41 La. Ann. 589, 6 South. 338; also 45 Central Digest, verbo "Sunday," No. 89.

In some cases, it has been decided that, although the jury had not completed its deliberations after it retired, it might deliberate and find a verdict on Sunday (after the case had been submitted).

[5] As to the assignment of errors: The appeal was brought up and the transcript filed on the 5th day of August, 1913. The cause was argued in the Supreme Court in November of the same year. The assignment of errors, setting forth many points of error of form, but not of substance, was filed about the time the cause was argued and submitted. It was too late; it should have been filed within 10 days after the transcript was filed in the Supreme Court. Marr's Criminal Jurisprudence, § 516, note.

[6] But, even if we were to consider the most important of the errors urged in the assignment, as the indictment was in form, the accused was arraigned, and as to the jurisdiction, it is the merest supererogation to say that the court had jurisdiction.

It appears by the minutes of the court that counsel and their client came into open court and announced that the accused was ready for trial. It further appears by the minutes that on June 21, 1912, the accused and his counsel were present in open court; the indictment is in due form, and was returned into court in due form. The trial was had, and the day following he was again in court. The verdict was rendered again in open court. It follows from the foregoing that counsel had no ground to charge that none of these formalities had been followed.

Learned counsel have prepared a mountain

of labor, have raised a number of grounds, in a belated assignment of errors.

The proceedings cannot be annulled on the grounds urged.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.

MONROE and SOMMERVILLE, JJ., concur in the decree.