ST. PAUL, J.
The defendant was convicted and sentenced for selling for beverage purposes intoxicating liquor, to wit:
“Extract of Jamaica ginger, an alcoholic liquid containing- more than one-half of 1 per cent, of alcohol by volume, and fit for use for intoxicating beverage purposes.”
His appeal presents eleven bills of exception as follows:
Bill of Exception No. 1.
A witness for the state was asked:
“State whether or not this tincture of Jamaica ginger you bought from the defendant was fit for beverage purposes.”
And the question was objected to by the defendant as calling for the opinion of the witness, “and the proper foundation had not been laid.” Which objection was overruled.
This bill is bad for two reasons: (1) It fails to show how the witness answered the question. Non constat but that the witness answered that extract of Jamaica ginger was not fit for beverage purposes, or that he did not lenow, or even that he answered the question at all. In neither case could this defendant have suffered thereby. And (2) the question whether or not extract of Jamaica ginger be or be not fit for use as a beverage involves only a question of fact, dependent upon personal experience or observation, as to which any witness may testify without specially qualifying as an “expert.” The exr tent of such experience and observation may, of course, be inquired into on cross-examination.
Bill of Exception No. 2.
A witness for the state was asked some question (not given), to which he answered:
“I cannot answer that question from a chemist’s point of view. From my personal observation—”
Here the witness was interrupted by an objection on the part of defendant, “as he states he cannot answer from the chemical point of view; and it calls for the opinion of the witness.” Which objection was overruled.
*31 This bill; also, is bad for two reasons: (1) The question propounded is not given, and hence we cannot determine whether it was such as might be answered only “from the chemical point of view”; and (2) the bill does not show that the witness ever completed his answer; and, if so, how. 'Non constat that the witness ever completed his answer; or that his answer given “from my [his] personal observation” was in any way prejudicial to the defendant.
In State v. Dyer et al., 154 La. 379, 97 So, 563, this court held that:
“Bills of exception complaining of rulings on evidence, but not showing how or why the testimony was relevant or irrelevant, or how answers to such questions as were answered could have prejudiced accused present nothing for review.” (Italics ours.)
In that case, “many of the questions were not even answered,” and we were constrained to hold that such bills “are purely frivolous in the shape in which they come before us.”
Bill of 'Exception No. 3.
A witness for the state was asked to identify certain bottles, by their labels and by tasting and smelling their contents, as being the same bottles given into the custody of the sheriff in this case.
This was objected to as calling for “the opinion of the witness,” and' because “the proper foundation for expert testimony had not been laid.” Which was overruled.
We do not see wherein this called for any opiivion by the witness; it called merely for a statement of fact, dependent, like all other testimony as to facts, upon the observation and memory of the witness. On cross-examination the worth and sufficiency of the identification might ■ indeed have been questioned by inquiring into the reliability of the witness’ memory and the extent of his powers of observation; but the testimony was surely admissible for whatever it might' be worth in identifying the bottles and their contents with the case on trial. And we do not see what “expert” testimony can possibly haVe to do with this question. See State v. Hopper, 114 La. 557, 38 So. 452.
Moreover, the bill does not inform us if, or how, the witness answered the question. Non constat that he identified either the bottles or their contents; hence we cannot say whether the defendant was prejudiced by the answer, if given. The bottles, which were afterwards introduced in evidence, may have been identified only by some one else.
Bill of Exception No. 4.
A witness for the state was asked by the district attorney:
“Ho I understand your testimony, as given in this case, to be that the defendant drank part of the contents of this bottle you bought from Mm?”
To wMch defendant objected as “calling for the opinion of the district attorney on a matter of fact, and, furthermore, it is grossly leading and suggestive of the answer.” Which was overruled.
The first part of the objection is sophistical but not sound-; it would prefer the form of the question over the substance thereof. It is quite true that, according to the form of the question, the district attorney asked the witness to state what impression had been produced on his (the district attorney’s) mind by the evidence which he (the witness) had given; which, of course, no one but the district 'attorney himself could know. But in substance, the district attorney was merely stating the impression so produced, and asking the witness to confirm or correct that impression according to the facts. This method of examination is clearly permissible; it is a mere summing up of the testimony given by the witness, which affords him an opportunity to correct, if necessary, any erroneous impression that might have been acquired during the course of his examination".
*33 In State v. Walsh, 44 La. Ann. 1122, 11 So. 811, the following question, by the district attorney, was objected to by defendant’s counsel, as leading,
“I understand you to say that when you got there, after running there, you found one man lying partly on the banquette and partly in the gutter, dead?”
The answer of the witness was, “Yes, sir,” and the court said:
“It is true that the interrogatory must not assume facts as proven, which have not been proven;” but “when the purpose is to lead the mind of the witness to the subject of the inquiry, the examining counsel may recapitulate to the witness the acknowledged facts already established .in order to bring him to the material points on which he is to speak”—citing, 1 Greenleaf on Evidence, § 434; Roscoe Grim. Ev. p. 730.
In the case before us, as in that just cited, the witness was asked, in effect, merely to affirm or deny that such was the purport of the testimony given by him. It was not leading or suggestive merely because it could, or should, have been answered categorically, or even plain Yes or No. State v. Black, 42 La. Ann. 861, 8 So. 594.
Moreover:
“Notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court, which may, in criminal as well as civil cases, allow such questions to be put to a witness when it deems such course necessary or advisable, or refuse to allow such questions where the circumstances do not seem to require' such mode of examination; and in the absence of a palpable abuse of discretion resulting in prejudice to the complaining party, reversible error cannot be predicated upon a ruling of the trial court as allowing leading questions.” 40 Cyc. 2427, 2429, verbo “Witness.”
Finally, this bill is bad because it does not show how the question was answered, or even that it was answered at all. We are therefore unable to say that defendant suffered any prejudice thereby. “It is, immaterial that certain questions were leading where it appears from the answers given that the form of the questions did not affect them.” 40 Cyc. 2433.
It is true that counsel for defendant tells us in his brief that the witness did answer the questions objected to in this and in the three preceding bills, and that his answers were unfavorable to the defendant.
But, as we have said, the bills of exception do not show this; and the record cannot be supplemented by the statements of counsel, whether made orally or by brief. The transcript before this court is its only guide as to what occurred in the court below, and the only source of information to which it may go. What is not in the transcript does not belong to the ease when it is before us. Denon esaistentibus et non apparentibus eaclem est lea).
Bill of Exception No. 5.
 When certain bottles and their contents were offered in evidence the defendant objected because there had been “no analysis of their contents,” and that any testimony as to their contents by a witness (who was not a chemist) was merely the opinion of such witness, and was not competent to prove the nature of the contents of such bottles. Which was overruled.
We have held that it is not essential to conviction for violating the Prohibition Laws that the liquor possessed, trafficked in, or manufactured, should be introduced in evidence. State v. Hebert, 158 La. 209, 103 So. 742. Nevertheless such liquor may be introduced in evidence as part of the proof of the corpus delicti. State v. Gani, 157 La. 235, 102 So. 319.
Hence the bottles and their contents, when identified as having been sold by this defendant, were clearly admissible in evidence herein regardless of what their contents might be. That was the stuff sold, and its introduction was relevant as a beginning of proof of the corpus delicti. But of course, it behooved *35 the state, in order to make out a case against defendant, to prove that those contents consisted of “intoxicating liquor”; as without such proof there would be no crime. But the order of proof was quite immaterial. State v. Gani, supra.
And the proposition that the intoxicating character of the liquid could only be proved by a chemical analysis thereof is wholly unfounded. State v. Prophet, 157 La. 550, 102 So. 666. It may be, when the alcoholic contents of a liquid approach the border line of “one-half of 1 per cent, by volume,” and when such liquids may be not intoxicating in fact but merely made so by law, that then a chemical analysis may be necessary to determine whether or not the legal limit of one-half per cent, be or bfe not exceeded. But courts must take notice of the fact that fluid extracts, essences, and tinctures, contain necessarily a very high percentage of alcohol. And just as the fitness or unfitness of such extracts, essences, and tinctures for beverage purposes may be shown by the experience and observation of witnesses, so also may their intoxicating character be shown by the same sort of evidence. Thus, where “several persons familiar with all kinds of whisky testified that this (the liquor involved) was corn whisky,” and it smelled to the court like whisky, the court was justified in thinking that it had been sufficiently proved that it was whisky. State v. Prophet, supra. Thus, also:
“While expert testimony based on chemical analysis is admissible to show that a certain liquor is an intoxicant, or that it contains a certain amount of alcohol, one need not be an expert to be qualified to testify'that particular liquor was intoxicating, or that it was alcohol, wine or whisky.” 16 Corpus Juris, 751, verbo “Criminal Law,” § 1538.
And again:
“Even though "he is not an expert, a witness who has sufficient knowledge and experience to form .a correct opinion is competent to testify as to whether certain liquor is or is not intoxicating.” 83 Corpus Juris, 775; verbo Intoxicating Liquor, § 528.
Bill of Exception No. 6.
This bill is so manifestly frivolous that it was mentioned neither in argument nor in brief.
A witness for the state was asked:
“Repeat what was said the first morning you went in there, about getting a drink.”
And this was objected to by defendant as follows:
“This question and answer objected to for the reason that it calls for the opinion of the district attorney, and for the further reason that it is grossly leading and suggestive of the answer.” (Objection overruled.)
Also, it does not appear from the bill, that the witness answered anything.
Bill of Exception No. 7.
A witness for the state being on the stand was asked by the district attorney “as to what happened, and if he bought any Jamaica ginger on the 19th,” the information having charged a sale on the 18th.
Which was objected to by defendant as “not in the pleadings.” (Objection overruled.)
It was certainly competent for the state to show, if it could, other sales made by the defendant about the same time as that charged for the purpose of showing the intent of the defendant, to wit, that said sale was made for beverage and not for medicinal purposes. State v. Stewart, 157 La. 494, 102 So. 584.
Moreover (1) the bill of exception does not show that the witness answered the question; and (2) the bill is not signed t>y the trial judge.
Bills of Exception Nos. 8 and 9.
A witness for the state, being under cross-examination, was asked by counsel for defendant:
(1) Whether he had not on the afternoon of the 19th made the same representations *37 (as on the 18th) about having cramps in the stomach in order to induce defendant to sell him the Jamaica ginger for medicinal purposes.
(2) Whether he had not, on the same occasion, had something to say to defendant about getting some alcohol, and stated that he (the witness) had two truckloads “coming in from somewhere,” which he (the witness) could distribute.
(3) Whether he had not told the defendant that he (the witness) was representing a malt manufacturing concern, and was offering for sale a tablet “containing certain alcoholic ingredients” that were suitable for making homebrew, and that it would be a good thing for defendant to buy some.
To which the district attorney objected that it was all immaterial and irrelevant to any issue in the case, and that, if asked for the purpose of impeaching the witness, it was not the proper way to lay a foundation for impeachment nor a proper question for impeachment.
The objections of the district attorney were maintained, and the witness was not allowed to answer.
We think the objections should have been overruled and the witness allowed to answer.
(1) Whether or not the witness represented to the defendant th'at he was suffering from cramps in the stomach had a direct bearing on the question whether or not the defendant sold the Jamaica ginger to the witness for medicinal or for beverage purposes, and the question whether or not the defendant sold the ginger for medicinal or for beverage purposes had a direct bearing on the guilt or innocence of the accused. It was therefore very relevant to the issues involved, and the witness should have been allowed to answer.
(2) and (3). The object of the question here put to the’witness on cross-exami-1 nation by counsel for defendant was evidently to show, if he could, that the witness was himself engaged in the illicit sale of intoxicating liquor, and thus to impeach his credibility.
It is true that there must be some limit to the cross-examination of witnesses. State v. Wren, 121 La. 55, 46 So. 99; State v. Haab, 105 La. 230, 29 So. 725. But:
“On cross-examination it is permissible to ask a witness questions for the purpose of testing his reliability and affecting his credit, and for this purpose great latitude is allowed. * * * And, generally, so long as it does not call for hearsay evidence, any question tending to show the veracity or credibility of th,e witness regarding the matter testified to or the probability of the testimony is proper.” 40 Oyc. 2564, 2566, verbo “Witnesses.”
Accordingly, in State v. Foster, 153 La. 154, 95 So. 536, this court said:
“Defendant may be questioned on cross-examination, like any other witness, as to the commission of other offenses whether felonies or misdemeanors, for the purpose of impeaching his credibility”—citing a long line of authorities. (Italics by the present writer.)
Bill of Exception No. 10.
After the evidence was closed, and whilst the district attorney was still arguing for the state, the trial judge announced his ruling without waiting to hear counsel for the accused. Thereupon the latter asked to be heard, but the court ruled that it did not care to hear further argument, and proceeded at once to rule against defendant. To which ruling of the court this bill of exception was reserved.
It is true that when the argument involves only questions of law, or questions of fact re viewable on appeal, the trial judge is not obliged to hear argument on a matter which he believes himself competent to dispose of without the assistance of counsel. But the reáson is that in all such cases any error into which he may fall is reviewable on appeal, and. thus the party aggrieved is, not *39 without a remedy. State v. Boasso, 38 La. Ann. 202; State v. Dunn, 41 La. Ann. 610, 6 So. 176; State v. Blount, 124 La. 202, 50 So. 12; State v. Jackson, 134 La. 599, 64 So. 481, Ann. Cas. 1916B, 27.
But the rule ceases with the reason thereof, and when the trial judge or jury disposes finally of the matter without right of appeal, as the judge and jury do in criminal eases on questions of fact, the defendant is entitled to a hearing before he is condemned. And whilst the time to be allowed for argument is in the sound discretion of the presiding judge, even when the case is on trial before a jury, which will not be interfered with in the absence of apparent abuse of such discretion or arbitrary exercise thereof (State v. Pierfax, 158 La. 927, 105 So. 16), nevertheless the defendant is entitled to be heard through counsel before he is condemned.
In State v. Cummings, 5 La. Ann. 331, our predecessors said:
“It was a reproach to the common law of England that prisoners were not allowed the aid of counsel when accused of crimes, * * * and often the greatest injustice and oppression occurred. This led to the guarantee of the right of counsel in ottr liberal Constitutions, and the right should be liberally construed.” (Italics ours.)
Again, in State v. Ferris, 16 La. Ann. 424, our predecessors said:
“The law in securing to them [persons- accused of crime] the assistance of counsel did not intend to ewtend a barren right. * * The counsel appointed by the court is entitled to a reasonable time for preparation-. * * * But what constitutes a reasonable time must depend upon circumstances; and should be regulated by the district judge in the exercise of a sound discretion. In the case at bar no time whatever was granted to the party.” (And the case was thereupon remanded for a new trial. Italics ours.)
We think the trial judge erred in refusing to hear the accused through his counsel before passing judgment upon him. Counsel should have been allowed a reasonable time in which to present the case from the standpoint of the accused, and the refusal of the trial judge to grant him any time at all was the denial of a constitutional right to be heard.
Bill of Exception No. 11.
This is the usual perfunctory bill of exception reserved to the overruling of a motion for a new trial on the ground that the conviction was contrary to the law and the evidence. It presents nothing for us to review.
Decree.
The conviction and sentence herein are therefore set aside, and the case is now remanded for a new trial.