## NARCISSE CARMOUCHE v. FRANCIS P. and L. BOUIS.

One of the defendants, the father of the other, directed his son to guard the sugar cane field from depredations of negroes, the field having been previously visited by such trespassers. While on the watch, the son saw a gang of negroes mounting the fence to enter the field. He fired, and wounded one of the negroes so that he died. *Held :* That both father and son were liable to the owner for the value of the negro, and that it was immaterial whether the son took aim and intended to shoot the negro or not.

Where the killing is necessary to prevent a felony, or to prevent the escape of the felon after the crime has been committed, the homicide may be justified under the legal authorities. There may also be cases of forcible trespass which would justify a homicide necessary for their prevention. But homicide is not justifiable to prevent mere misdemeanors, nor where it is not necessary for the defence of a person, or his family or property.

APPEAL from the District Court of Pointe Coupée, *Farrar*, J. *A. Provosty*, for plaintiff, contended : We are truly at a loss to conceive on what ground the defendants rest their hope of relief at the hands of this court.

As he was not yet within the enclosures of the defendants, the killing of the slave could not be necessary for the defence of their persons, their family, *or even* their property and consequently was not justifiable. The verdict of the jury gave plaintiff the lowest estimate of the value of the slave, and the property of the slave in the plaintiff is established with certainty. *Bibb* v. *Hebert*, 3d Ann. 132. When *Leon Bouis* shot the slave, he was in the exercise of the

functions in which he had been employed by his father, *François P. Bouis;* and to shoot him he made use of the gun which he carried by his father's instructions; and the consequence of the discharge, whatever might have been the intention of the party, being the death of the slave, *François P. Bouis,* the employer, is answerable. C. C. art. 2299. *Hart* v. *The New Orleans and Carrollton Railroad Company,* 1 R. R. 181. Toullier, vol. ii, No. 284.

*François P. Bouis* caused his son, *Leon Bouis,* to do an unlawful act, and after it was committed, far from disapproving him for it, only complained of his having aimed at one instead of firing at all : he is, therefore, liable *in solido* with him. C. C. art. 2304. Act of 1844.

*T. J. Cooley,* for defendants, made the following points : 1. A person may lawfully beat another when necessary for the defence of his property,—3 Black. Com. 131. . 2d Ann. 1020,—and may also kill, if necessary to its defence. 3d Ann. 132. 2. A private person is bound to arrest a felon, and if he cannot otherwise, may lawfully kill. 4 Black. Com. 293. 1 Chitty's C. L. 17 and 18. 9 M. R. 221. 3. By the ancient laws, the killing of a person committing theft or robbery, in the night time, was lawful. Exod. xxii, 2. Potter's Antiq. b. 1. c. 24. Laws of Twelve Tables, l. 1 and 7, j. ii. See also, Hale's Pleas of the Crown, 488. See also, Puffendorf, L. of N. l. 2. c. 5. 4. Admitting that plaintiff's slave was unlawfully killed by *Leon Bouis,* in order to make *F. P. Bouis,* his father, responsible for the act, it must be shown that either he was a co-trespasser, aiding and assisting, or that the act was done by one in his employ, in the exercise of his functions ; and that it was done by negligence or unskilfulness ; and that the employer could have prevented it. It is alleged in the petition, that *F. P. Bouis* was a co-trespasser. There is not a particle of proof which goes to show that he knew when the act was done, or had ordered it. If done through the negligence and unskilfulness of *Leon Bouis,* was he in the exercise of his functions when he shot the slave ? If he was, could *F. P. Bouis* have prevented the act ? It is not even alleged in the petition, much less proved. C. C. 2299. 8 N. S. 503. 8 L. R. 537. 2d Ann. 406. Nullum crimen petitur is qui non prohibet ; quum prohibere non potest. L. 109 de Rey. Jur. Culpa caret qui sit, sed prohibere non potest. L. 50, dict. tit. 5. If the wrong is done wilfully and maliciously, the employer is not liable. 18 L. R. 490.

The judgment of the court was pronounced by

PRESTON, J. The plaintiff has instituted this suit to recover from the defendants *in solido* the value of his slave named *John,* killed by one of them, *Leon Bouis,* while in the service of his father, the other defendant.

The testimony shows, that in the latter part of September, 1849, the slave was in the act of crossing the fence of the defendant, *Francis P. Bouis,* who is a sugar planter, probably for the purpose of taking sugar cane, and that there was one or more negroes with him. *Leon Bouis,* the son, with the overseer, were keeping watch with fire-arms, by direction of the father, he having before lost a considerable quantity of his cane. *Leon Bouis* fired, and the slave *John* was severely wounded in the leg, of which wound he lingered and died, notwithstanding all proper care was taken of him, and medical aid furnished.

The overseer and son were instructed by the father not to shoot the negroes they might discover trespassing on the fields, but to frighten them by firing ; and it appears the son did not take aim when he fired the fatal shot. Nevertheless, he called to the negroes to stop, and they not doing so, he did take aim, and would have fired a second shot, but the gun snapped. And, therefore, the counsel of the defendants has argued the case principally on the grounds that a person may lawfully beat another in defence of his property, and kill him, if necessary to its defence.

Whether the slave was wounded carelessly or intentionally, we cannot reverse the judgment under the circumstances of this case. On the supposition that the son fired without taking aim, and, in pursuance of the instructions of his father, to frighten the negroes, he must have fired carelessly, and is responsible for the injury. Code, art. 2295.

If the injury was done intentionally by *Leon Bouis*, the question arises—which is always to be solved in such cases—was the wounding or homicide necessary to the defence of the property he was guarding.

The authorities quoted by the defendants' counsel apply to the cases where the killing is necessary to prevent a felony, or when a felony has been committed the escape of the felons cannot be prevented except by killing. In the present case, a trespass only was intended; the trespassers had not yet entered the field, and the least alarm would have driven them off. There may be cases of forcible trespass which would justify a homicide necessary to prevent it: as for example, in the defence of a man's house, which is his castle, against a forcible entry so violent as to require this extreme resort. So, perhaps, of a trespass upon a man's field to take by force his standing crop, putting the owner in fear. But in the case before us, the necessity to wound or kill, which a case of intended robbery may present, did not exist. The cane the negroes were about to take, is not of that class of things for which men commit a robbery, or take by putting the owner in fear. The trespassers intended to commit a misdemeanor, and not a crime.

Homicide is not justifiable to prevent mere misdemeanors, or even felonies without force, such as picking pockets. 1 Hall, 488. Thus, where a servant set to watch in his master's garden at night, shot a person whom he saw going into his master's hen-roost, it was holden that he was not justified in so doing, unless he had fair ground to believe his own life in danger. *The King* v. *Scully*, 1 Carrington & Paine's Rep. 319.

The present case cannot be distinguished from that of *Bibb and others* v. *Hebert*, 3d Ann. 132, in which this court held that the killing of a slave in the act of committing a larceny, within the enclosures of the defendant, was not justifiable, because not necessary for the defence of the person, family, or even the property of the defendant, and that he was bound to pay the owner for the loss by reason of his death. Courts and juries must limit the use of deadly weapons to cases of absolute necessity in defence of person or property. Any other rule would lead to an intolerable recklessness of human life.

Believing, with the jury, that the slave of the plaintiff was either carelessly or unlawfully killed, we think they came to the correct conclusion in holding both defendants responsible for the damage. It was imprudent in the father to direct the firing of the guns at all, even to frighten trespassers. It might and probably would have led to the use of fire-arms in return, and tended to lead to the shedding of human blood, instead of preventing it. Less dangerous means should have been resorted to, even at the risk of failing to detect and arrest the trespassers. Besides, the jury may have inferred the previous assent of the father to the acts of his son while in his employ from his subsequent declaration, in substance, and with a full knowledge of the circumstances, that the sole reproach he had to make to his son was, for having fired upon one alone, instead of firing upon the gang.

The judgment of the district court is affirmed, with costs.