## State *v.* Sarah Connor, f. w. c.

The competency of a witness to testify, is restored when he has suffered the penalty of the crime of which he has been convicted.

APPEAL from the First District Court of New Orleans, *Larue,* J.  *Isaac Johnson,* Attorney General, for the State.  *Henderson* and *Field,* for the accused.  By the court:

Preston, J.  The appellant was indicted for perjury, convicted and sentenced. She has taken an appeal from the judgment rendered against her.  The only ground of error assigned is, that the district court erred in admitting the evidence of one *Cammeyer,* who had been convicted of swindling.  He was convicted in 1841; was sentenced to one years' imprisonment, at hard labor, and, after suffering the punishment inflicted upon him, was discharged.  The judge of the district court considered the objection to the testimony of *Cammeyer,* as affecting his credibility rather than his competency, and permitted it to be given to the jury for what it was worth.  His reasons, embodied in the bill of exceptions, are thus expressed: "It is true that the witness was convicted and sentenced; but it is also true that he served his term of punishment, thus restoring his competency if ever it was lost, however much his conviction may affect his credibility. The court has great doubt whether the conviction, for the offence of which the witness was accused, renders him incompetent at all, inasmuch as our law has annexed incompetency to testify to the crimes of perjury and subornation of perjury alone, which would reasonably lead to the conclusion that the Legislature intended to include no others in the same class.  If it intended to include others, it would have mentioned them.  If all others were to be included, it would not have specified the two particular offences.

The maxim *inclusio unius, exclusio alterius est,* is too general, and subject to too many exceptions in its application, to govern the construction of criminal statutes.  It is therefore urged, that *Cammeyer* was a witness wholly incompetent to testify, on account of his conviction and sentence to punishment for an infamous offence.

If this were an original question, to be decided upon general principles, we could see no reason why the testimony of a convict, under sentence, should be excluded.  Evidence is that which convinces the mind of the existence of a fact. The testimony of the basest of mankind may often be valuable in the investigation of truth.  That of a convict, for an infamous crime, is excluded, on the ground that no credit should be given to what he proves.  And yet, notwithstanding the stigma, much might be elicited from a convict, which would satisfy an intelligent and discriminating jury of facts which could not otherwise be proved.  There is no doubt that a fact in itself improbable, supported by such testimony, would not, upon the strength of it, obtain credence.  It is in itself entitled to little weight, and it cannot be presumed that a jury would give it more weight than it deserved, unless we suppose that by the mere fact of being sworn as jurors, and being bound to examine with care and weigh with caution all the evidence brought before them, would divest the persons of whom the jury was composed, of all that common sense and discrimination which charac-

terizes each individual in the ordinary pursuits of life. Satan himself might be believed when his assertions were in themselves probable, and were corroborated by the testimony of others, though, if such assertions stood alone and were contrary to our general observation of the nature of things, they would obtain no credit.

The whole tendency of modern jurisprudence, as to evidence, is to lay every thing before a court and jury which may elicit truth, trusting to their wisdom and intelligence to give only the weight it deserves, to that which is subject to suspicion and objection. In conformity to this view, have been most of the modern decisions and statutes upon the subject of evidence. The interest of a person in a suit, or the character he bears, goes to his credit rather than to his competency. More than thirty years ago Mr. *Chitty* observed, in relation to the very subject before the court: "On principle, it would seem that in general the objection to a witness, on account of his having committed a crime, particularly if not perjury, ought rather to affect his credibility than his competency, for though a person may be proved on his own showing, or by other evidence, to have committed a crime, it does not follow that he can never afterwards feel the obligation of an oath." Vol. 1, ed. 1819, p. 490.

Still, under the known principle of the common law, we should not disapprove of the rejection of the testimony of a person laboring under a sentence of conviction, of a crime belonging to the class embraced under the terms *crimen falsi*, as incompetent, especially as our code, in civil cases, retains the principle " that the competent witness is not one of those whom the law deems infamous." But, for myself, I do not say that I would reverse a judgment, in a criminal case, because such testimony was admitted, with all due caution, by the court; that it was liable to every unfavorable presumption arising from the want of credit on the part of the witness. The reason of the rules established in early times, when juries were ignorant and illiterate, which excluded much evidence from their consideration, ceases to have much force now that they are greatly improved in their composition, by learning and intelligence, and therefore there is much reason for the relaxation of the rules themselves.

It is not necessary to say more in this case, in relation to evidence objected to, on account of the infamy of witnesses generally, because, if the opinion of the district court, that the competency of the witness was restored by suffering the punishment to which he was sentenced, the subject we have alluded to, rather than fully discussed, becomes unimportant.

Whoever reads the section of Starkie, Phillips, Chitty, or any other elementary writer on evidence, in relation to the restoration of the competency, as witnesses, of persons who had been rendered incompetent by reason of crimes ; by being admitted to the benefit of clergy, or undergoing a punishment equal to clerical purgation, by pardon, by the reversal of the judgment or other means, will see that there was no reason or consistency in the common law on the subject, as modified by the statutes of England, prior to the year 1805, when we adopted the rules of the common law as to evidence in criminal cases.

All the learning in relation to the restoration of competency, after conviction of an offence which admitted of the benefit of clergy, by purgation before the ordinary, it is of course out of the question to consider. And yet all criminals who could read, and for almost all crimes, were entitled to the benefit of clergy. This description embraces almost all criminals who are brought before our courts, in modern times almost all being taught to read. They might therefore be restored to competency by purgation, the process of which, an author

observes, almost always involved perjury on behalf of both the criminal and his compurgators.  By perjury and subornation of perjury, therefore, they could render themselves competent to testify.

By a statute of Elizabeth, the convict could be restored to competency by being burnt in the hand.  Thus, an infamous mark of his infamy removed it.

As to pardons, the king could have the testimony of convicts when he wanted it, and excluded their testimony, by refusing his pardon, when it did not suit the purposes of his prosecution.  And Phillips and Amos observe in their Treatise on Evidence, "It has happened that, for the purpose of a single prosecution, no less than five convicts have been pardoned, whereas if such evidence could be used without a pardon, it would be more free from suspicion, and the ends of justice would be more effectually attained," p. 20.

Even in the United States it has been held, that if the witness was convicted in the State where his testimony is offered, the conviction renders him incompetent; but if in a sister State, the conviction does not affect his competency.  Such unreasonable and inconsistent, we might almost say absurd, results, must flow from an erroneous source.  We have, therefore, examined with as much care as the remainder of the term would admit, some of the elementary writers, and also decisions of the English courts upon the question of the means by which a person rendered incompetent as a witness, by reason of conviction and sentence for an infamous crime, may have his competency restored.  We find much confusion in the decisions, and in the reasoning upon the subject; distinctions are made where no difference really exists; and, cases falling under the same general principles, have been decided in contradiction to each other.  The law was unsettled by the courts, except so far as all agreed, that a pardon restored the person in such manner as to make him a competent witness.  Now, this discharge from the punishment, could no more change the character of the convict, than his sufferance of the punishment deemed adequate to his crime.

In this condition of uncertainty as to the law, the 9th statute of George IV, chap. 32, was passed.  This statute does not pretend to alter or amend the common law.  It was passed because, in its own words, it was deemed expedient to remove all doubts respecting the civil rights of persons convicted of felonies, not capital, who have undergone the punishment to which they have been adjudged.  It must, therefore, be regarded as an exposition of the common law, by the highest authority; and it makes the suffering of the penalty equally efficacious in restoring competency, with the pardon of the crown.  We think, therefore, it was the common law of England, as modified by statute in 1805, that the suffering of the punishment of crime restored the convict to his civil rights.

The humane principle must prevail in our criminal code.  Our statutes prescribe penalties, which, being suffered, no other can be inflicted.  And yet it would be the greatest possible additional punishment to subject a man, who had committed an offence and suffered the penalty, to the still further and great and cruel punishment of not being able, effectually, to complain when robbed of his property, deprived of his liberty, or his life in danger, because neither his oath or testimony would be taken to secure protection or redress.  He should be permitted to say, I have expiated my offence by suffering all the law imposed upon me for my correction and an example to others; I should not be subjected to still greater punishment.

We are of opinion that there is no error in the judgment of the district court.  It is affirmed, with costs.

STATE
v.
CONNOR.

EUSTIS, C. J.    The time allowed for the consideration of this cause, has not enabled me to examine all the views presented in the opinion of Mr. Justice Preston, but I am satisfied with the correctness of his conclusion as to the admissibility of the testimony of *Cammeyer*, and concur in the affirmance of the judgment.

ROST, J., concurred with the Chief Justice.