OVERTON, J.
 

 Defendant was charged together with Homer Hale and Joe Willis with having, on September 25, 1927, feloniously broken and entered the store of D. F. Peck, in the nighttime, with the intent to steal. Hale and Willis pleaded guilty to the offense. James pleaded not guilty to it. James was tried and convicted on the charge, and, from the sentence imposed, prosecutes this appeal.
 

 The first bill of exceptions bears no number. It was taken to the overruling of a motion to quash the information, because the minutes do not show that the information was filed with the leave of court. Under the law, as presently framed, it is unnecessary to obtain permission of the court, as a prerequisite, to the filing of a bill. Act 156 of 1898; State v. Drummond, 132 La. 749, 61 So. 778; State v. Petrich, 122 La. 127, 47 So. 438; Marr’s Crim. Jurisprudence (2d Ed.) p. 513, § 347. Moreover, the minutes were corrected; so as to conform to the facts by showing that leave of court was first had and obtained for-the filing of the bill.
 

 The second bill of exceptions is numbered “1A.” It was taken to a ruling of the-court directing that the minutes be correct
 
 *829
 
 ed so as to show that the hill of information in the case was filed with the leave of court. It is within the province of a court to correct its minutes so as to make them conform to the truth, and this it may do after passing upon a motion, based upon the incorrect minutes, as well as before passing upon such motion. Marr’s Crim. Jurisprudence (2d Ed.) p. 588, § 389. Moreover, so far as the validity of the filing of the information is concerned, it was unnecessary that the minutes be corrected.
 

 The third bill of exceptions — the one designated in the r'ecord as bill No. 1 — was taken .to the overruling of an objection, urged just as the jury was about to be impaneled, to going to trial, upon the ground that a copy of the bill of information, upon which defendant was ordered to trial, had not been served upon him with a copy of the jury list from which the jury to try him was to be selected. It appears that the session of court at which defendant was tried was ordered for the week beginning October 31, 1927. His case had been fixed for October 11, 1927, which fell during a prior session of court, but a continuance was granted at the instance of defendant, and the case was re-fixed for November 2,1927, and a jury session of court ordered for the week beginning October 31, 1927, during which week defendant was tried. There were three bills of information, or cases, pending against defendant at the time. A copy of the bill of information was served upon him, on October 8, 1927, in the case in which he was tried, together with a copy of the venire for the session for which the case was first fixed. A certified copy of the venire for the week beginning October 31, 1927, was served on defendant on October 26,1927, but a copy of the bill of information was not served upon him at that time, nor did the copy of the venire that was served upon him show in which of the three cases, pending against him, it was served.
 

 The bill is not well founded. While unquestionably defendant was entitled to service of a certified copy of the information and of the venire, at least two full days before the trial, yet, where a certified copy of the information has been served upon a defendant once, it is unnecessary to serve it upon him again, when the case has been refixed, although it be refixed for another session of court, following a continuance. State v. Comstock, 36 La. Ann. 308; State v. Washington and Brown,
 
 40
 
 La. Ann. 669,
 
 4
 
 So. 864.
 
 It
 
 was unnecessary that the copy of the venire, served on defendant, show the case in which it was served. The showing of the case could not have been of any possible service to him. The service answered the purpose for all cases pending against him at that term.
 

 The fourth bill of exceptions, which is designated in the record as bill No. 2, was taken to the overruling of a challenge for cause, directed against the juror R. N. Aderholt, on the ground that he had not resided in the parish for the required time, and was not a citizen of this state.
 

 As relates to-citizenship and residence, it is necessary that a juror be a citizen of the United States, and of this state, and a bona fide resident of the parish in which the court is held for one year next preceding his service. Act 135 of 1898, § 1. The juror was a citizen of the United States, and had left the. state of Mississippi, of which he had been a citizen, and established himself in the parish of East Carroll, in which the court was being held, with the intention of living there permanently, that is, of making his home there, and had resided there for over a year immediately preceding the time he was called, though had not resided in the state for two years.
 

 The challenge was properly overruled. While the juror had not resided in the state sufficiently long
 
 to become
 
 an
 
 elector, yet
 
 -his becoming an elector had nothing to do with
 
 *831
 
 his competency as a juror. As he was a citizen of the United States, the moment he came to this state and located in it, with the intention of remaining permanently, he became a citizen of the state, and, as he had resided in the parish for a year next preceding the time he was called as a juror, he was qualified in point of residence and citizenship to sit as a juror. State v. Willie, 130 La. 454, 58 So. 147. The fact- that the juror, who seems to have been an intelligent one, did not know, as a matter of law, whether he had resided here sufficiently long to become a citizen of the state did not disqualify him as a juror. Jurors are not required to be versed in law.
 

 The fifth bill of exceptions, which is designated in the record as bill No. 3, was taken to the overruling of an objection to a question, propounded to the sheriff of Madison parish, who had arrested defendant in his parish, seeking to elicit whether the sheriff had found anything on defendant’s person or in his pockets when the arrest was made. This question was objected to on the ground of irrelevancy, and because it is improper to inquire in a charge for burglary, where there is no count for larceny, as to the possession by the accused of property recently stolen. In connection with this bill may also be considered the sixth and seventh bills, designated in the record respectively as bills Nos. 4 and 5. The first of these was taken to the overruling of an objection to a question propounded to a deputy sheriff, while a witness on the. stand, after he had stated that defendant had made a statement; the question seeking to elicit what the statement was. The question was objected to because it was not shown that the statement had been made voluntarily, and request was made to permit defendant then and there to cross-examine the witness as to the voluntariness of the statement. The second of the two bills last mentioned was taken to the overruling of an objection to a question propounded to another deputy sheriff, while he was on the witness stand, the question seeking to elicit whether defendant admitted to him that certain articles had been taken from his person, or whether defendant had made any statement relative to the matter. The question propounded was objected to substantially on the same ground as the preceding one, and, in addition, upon the 'ground that it was leading, and was asked in a manner calculated to prejudice the jury. The sheriff, in answer to the question propounded to him, answered that he found on defendant two watches, a knife, and a purse. The watches and the knife were later identified as part of the property recently stolen from the store that was burglarized. The state clearly had the right to elicit evidence tending to show that a part of the property that was recently stolen from the store was found in defendant’s possession, in order to connect him- with the burglary and show the intent with which the crime was committed. 9 C. J. p. 1070, § 127; 4 R. C. L. p. 440, § 34, verbo Burglary. This is true, although the bill charged only burglary, and not larceny' also. It was also proper for the state to show by the deputy sheriffs what statements, if any, defendant made concerning his acquisition of the property. As the statements showed, if true, that defendant acquired the property legitimately, and were therefore exculpatory, and were evidently offered for the. purpose of showing their falsity, and therefore a conscious knowledge of guilt on the part of defendant, it may be doubted whether it was necessary for the state to show that they were made voluntarily,'but, be that as it may, the state did show, a few moments after the statements were testified to, in each instance, that they were so made, and the defendant had ample opportunity in both instances to cross-examine the witnesses on the voluntariness of the statements, and in one
 
 *833
 
 instance did so, and the result shows that the statements were made freely and without duress or promise. Therefore defendant has no cause to complain of the rulings made. Nor has defendant any cause to complain that the question propounded to the last witness was leading. It was a question put in the alternative, and, in our view, was not leading. Moreover, a trial court has discretion in permitting the asking of a leading question, and, in the absence of a palpable abuse of the discretion given, resulting in injury to the accused, reversible error cannot be based upon a ruling allowing such a question. 40 Oyc. p. 2427. Nor is there anything in the record disclosing that the question was propounded in a prejudical manner. Our conclusion is that these bills are not well founded.
 

 The eighth bill of exceptions, which is designated in the record as bill No. 6, was taken in connection with an offering made by the state, which, as taken down by the court stenographer, reads as follows:
 

 “The state now offers in evidence, with the request that the same be received and filed in evidence, the two watches and the knife, which the testimony shows were taken from the person of the defendant, H. L. James, at the time of his arrest, and which two watches and knife this witness (the owner of the store burglarized) has identified as having been property belonging to Mm, which was missing from the storeroom in the town of Lake Providence, on Monday morning, the 26th day of September, 1927, when he visited said store and found a considerable portion of property missing therefrom, and on which occasion he also found that a pane of glass had been broken out of the front door of said storeroom.”
 

 Defendant objected to the offering, together with the declarations and recitals made by the prosecution, on the grounds that the offering had not been identified, and because he had not had an opportunity to cross-examine the witness, and, as to the declarations and recitals of the district attorney, he objected to these on the ground that they were argumentative; a recital of facts not entirely yet proven, made in the presence of the jury, and calculated to prejudice the rights of the accused. When these objections were made, the state immediately withdrew the offering, and then offered, in so many words, the two watches and the pocket knife, concerning which the testimony of previous witnesses had been submitted to the jury, without attempting to narrate the evidence connected with the offering. The defendant then reiterated the objection made by him to the offering,' and insisted that the statements made were prejudicial to his client. WTien the court overruled the objection, defendant asked the court to instruct the jury to disregard the statements made in making the offering, and the assistant district attorney, who was conducting the prosecution, joined the defendant, as appears from the recitals in the bill, in making this request. The court stated that it would take care of the matter in its general charge. In the general charge the court instructed the jury as follows:
 

 “You have received the evidence from the witnesses, and you are to take the evidence as you hear it, and not as repeated by the attorneys.”
 

 While all the evidence offered on the trial does not appear to be before us, yet there seems to have been sufficient evidence, identifying the articles offered, to make them admissible at the time of the offering. Whether defendant did not have an opportunity, up to that time, to cross-examine the witness fully as to the identity of the articles does not appear. However, immediately after'the articles were offered, additional evidence as to their identity was offered, and defendant had- opportunity to cross-examine the witnesses touching that question, and did so, at least, in some instances. This evidence, of itself, was sufficient to identify the articles. Hence whatever irregularities there may have been in those .respects were cured by what later transpired. As relates to the statements made by the assistant district attorney in making the first offering, while there was
 
 *835
 
 no occasion for him to have detailed the facts in making the offering, which he considered the evidence established, and while he should not have done so, yet this irregularity was cured by his prompt withdrawal of the offering, and making it in proper form, and by his joining defendant in a request that the jury be instructed to disregard the statements. While the court should have given the instruction immediately, yet, in view of the withdrawal and request made by the assistant district attorney, we think that the instruction given by the court in its general charge was sufficient to remove all possible injury.
 

 The ninth bill of exceptions, which is designated in the record as bill No. 7, was taken to an examination of the back of a witness for the state, and to asking the witness one or two questions, and receiving the answers thereto, in the presence of the judge and jury, and out of the presence of the accused. It appears that, while Homer Hale, who was charged with this defendant with the commission of the crime here charged, and had pleaded guilty to it, was on the witness stand on behalf of the state, he' testified on cross-examination that he did not have a scar on his back as the result of a wound received in an attempt to escape from prison while undergoing punishment for another offense. Counsel for the defense wished to examine the back of the witness, and the court ordered the jury, the officers of the court, and the witness to go into the jury room, the judge following them, for the purpose of making the examination. Nothing was said about the accused going, and no bill was taken to his absence at the time, and no mention made of it until after the verdict was rendered. When those named reached the jury room, which was about 15 or 18 feet from where the accused was sitting, the witness stripped himself to the waist. One. of the counsel for defendant pressed a place on the witness’ back with his finger or hand, and the assistant district attorney requested Mm not to do so, and counsel for the defendant then used a pencil, touched a place on the witness’ back, and asked the witness if he had not been shot in that place, and received an answer. At this time one of the jurors made some comment touching the examination or the appearance of the witness’ back. The examination having been completed, the witness replaced his clothes, and all went back into the courtroom, after having been absent therefrom for about three minutes. It does not clearly appear, from the evidence attached to the bill, whether the door to the jury room was closed during the examination or not, the evidence on the point being somewhat conflicting.
 

 The sole purpose of the examination was to weaken in the interest of defendant the credibility of one of his alleged accomplices. As aptly said by the trial judge, if the accused was absent from the jury room at the time of the examination — and we accept it that he was — -it was because neither he nor his counsel asked that he be permitted to be present. In short, his absence may be said to have been voluntary. A temporary and voluntary absence of the accused during an unimportant part of the trial, where no injury appears’, is not sufficient ground to justify a reversal. Thus, in State v. Ricks, 32 La. Ann. 1098, which was a felony ease, it was held that a short and voluntary absence of the accused, where no injury was urged or shown, which occurred while his counsel were examining a witness, and also during the argument of one of them, was not sufficient to call for a reversal. See, also, State v. Moore, 119 La. 564, 44 So. 299. In the case of State v. Bertin and Capdeville, 24 La. Ann. 46, cited by defendant, the absence of the accused does not appear to have been voluntary. In fact, it is said that he was not permitted to be present when the inspection was made.
 
 *837
 
 Moreover, evidence was received during the inspection in that ease against the accused. While district attorneys and trial judges should avoid such occurrences as the present, yet we think there is not sufficient reason here to set aside the verdict. v
 

 The tenth bill of exception, which is designated in the record as bill No. 8, was reserved to the overruling of an objection to a question propounded by the state to the defendant while he was a witness in his own behalf, seeking to elicit whether defendant, after going to Lake Providence, got Shorty, who was a codefendant who had pleaded guilty, to pay for an inner tube for one of defendant’s tires. The question was objected to on the ground of irrelevancy, and because it was not connected with the examination in chief. The reason for asking the question was this: Defendant had testified in chief that one of the watches, found in his possession, which the state contended was stolen by him out of the burglarized store, was given him by Shorty as security for a board bill, which he (defendant) claimed he had become surety for, and the state desired to show that this statement was improbable, by showing that defendant was indebted to Shorty and thereby lessen the likelihood that defendant came into possession of the watch in any such manner as that claimed by him. The evidence was relevant for that purpose, and was also connected with the examination -of defendant, in chief, since its purpose was to destroy an explanation made by him in chief.
 

 The eleventh bill of exceptions, which is designated in the record as bill No. 9, was reserved to the sustaining of an objection urged by the state to two photographs of the codefendants of the accused, and to what purports to be their prison records; the photographs being a part of the report constituting the prison records. The objection was urged on the ground of irrelevancy, and because what purported to be the prison records were not only not signed, but not proven to be what they were said to be. The photographs of themselves were irrelevant. The prison records were not proved in- any manner. There was no error in the ruling.
 

 The twelfth bill of. exceptions, which is designated as bill No. 10 in the record, was taken to the refusal of the court to give two special charges. One of these reads as follows:
 

 “The accused in a criminal case has the right to address the jury and take the stand in his own behalf, yet, if in his testimony he should implicate a codefendant, the jury is instructed to attach no importance to the testimony so far as a codefendant is concerned.”
 

 The second of these charges reads as follows:
 

 “Where two or more defendants are charged with burglary, it must be shown that the defendant participated in the breaking or was present, or near the scene, acting as a guard or spy for protecting, or assisting in receiving the property from the premises burglarized.”
 

 As relates to the first of these special charges refused, without inquiring into the correctness of the legal principle there stated, it suffices to say that the charge is not pertinent to this case, for the reason that only one defendant was on trial. As relates to the second special charge, we are not prepared to say that the court erred in refusing it in its present form, without some qualification. Where two or more persons are charged with burglary in the same indictment or information, the charge necessarily involves conspiracy. State v. Gebbia, 121 La. 1083, 47 So. 32. And, where a burglary is committed pursuant to a conspiracy, one of the conspirators may have been at a considerable distance from the place burglarized — beyond hailing distance from it — for the purpose of accomplishing something to make it possible for the burglary to be successfully. committed, in which event he would be a principal, or, what is termed at common law, a principal in the second degree, since he would-be considered
 
 *839
 
 constructively present. 16 C. J. p. 126, §§ 113, 114. The special charge does not take into account that the jury might find that a conspiracy existed between defendant and his two codefendants who pleaded guilty, and that defendant, though some distance from .the scene of the crime, was absent from the scene to do his part by accomplishing something to make it possible for the crime to be successfully committed. Defendant has no cause to , complain of the refusal to give the special charge.
 

 The thirteenth bill of exceptions was taken to the refusal' of the court 'to grant a new trial. One of the grounds for a new trial, in addition to the alleged errors already considered, in passing on the foregoing bills of exceptions, taken before and during the trial, was that one of the jurors interrogated a witness during the trial, and got into an argument with the witness. Defendant says he urged no objection at the time, because he was afraid it might offend the juror. The judge, in his per curiam, says that the juror asked the witness one question, and then made some unimportant comment which was not prejudicial, and that defendant urged no objection at the time. Not having raised any objection at the time, the point, if it ever had any merit, was waived, and could not be revived in a motion for a new trial.
 

 Another of the’ grounds alleged for a new trial was that there were irreguiarities in selecting the tales jurors, in that there were several names in the tales .jury box which were also in the venire box, and that there were irregularities in drawing the names of jurors from the jury box at the time of the impaneling of the jury. Such complaints as these cannot be urged for the first time in a motion for a new trial. They were waived, if they ever had a basis oh which to rest, when the jury was impaneled without urging them.
 

 Another ground alleged for a new trial is that, while H. R. Whiteside qualified on his voir dire as a juror, he was nevertheless incompetent, because on the morning of the day on which he was selected as a juror he declared substantially that, if selected he would send the accused to the penitentiary, a fact which did not come to the knowledge of defendant until after the verdict was rendered.
 

 It appears from the evidence introduced on the trial of the motion that J. N. Hill’s son and Whiteside were drawn to serve as jurors for the week in which defendant was to be tried; that before going to the courthouse Whiteside went to Hill’s bank to transact some business, and, while there, Whiteside and the younger Plill conversed relative to being drawn as jurors for the week. Just before leaving, Whiteside said:
 

 “It is time to (or I will) go around and send him (referring to defendant, who was the only person expected to be tried that week) to the penitentiary.”
 

 The only two witnesses who testified on the motion were Hill, the father, and Whiteside. Hill testified that, when the remark was made, he turned to Whiteside and said:
 

 “There is no use for you to go, for you have disqualified yourself as a juror.”
 

 HiU further testified that, while the remark made a serious -impression upon him, still he did not regard Whitesidq as serious. Whiteside testified that he made some such remark, but that it was not seriously made, or intended as a serious remark; that it was made only in a light vein; that he did not give the remark any thought until it was mentioned on the day of the trial; and that he went into the jury box without an opinion as to the .guilt or innocence of the accused.
 

 The trial judge in his per curiam says:
 

 “Mr.. Whiteside is an intelligent, responsible and, in my opinion, a truthful man; he qualified
 
 *841
 
 himself absolutely as a juror in his examination on his voir dire in this case, and, in my opinion, on his examination on the motion for a new trial in this case, he told the truth when he said he had no bias or prejudice in the case, and knew none of the parties connected with it and that he was merely joking when he made the remark testified to by Mr. J. N. Hill.”
 

 There is no real conflict between Hill’s evidence and the evidence given by White-side. Our conclusion is that the remark was not seriously intended; that it was made in a light vein; that Whiteside did not qualify as a juror with the intention of convicting defendant; and that, while the remark was in bad taste, and should never have been made, even as an idle remark, still it affords no ground to annul the verdict.
 

 The fourteenth bill of exceptions, which is designated in the record as bill No. 12, was taken to the tefusal of the court to correct the minutes so as to show that defendant was not present throughout the trial, due to the momentary absence of the accused, when Hale’s back was examined. We have, in effect, disposed of this bill in passing on the ninth bill of exceptions, or the one designated in the record as bill No. 7.
 

 The last bill of exception was taken to the overruling of a motion in arrest of judgment. One of the grounds of the motion relates to putting two names in the tales jury box that were also on the regular venire list. Another ground of the motion is that the verdict of the jury is contrary to the law and the evidence.
 

 Since a motion in arrest of judgment must be based upon error patent upon the face of the record, and since neither of these grounds constitutes such error, neither can be urged by motion in arrest. As a matter of fact, the first of these grounds has already been considered by us in passing upon the motion for a new trial, and the second is beyond our jurisdiction, no matter how it is raised.
 

 The third and last ground of the mo- ' tion in arrest is that a certified copy of the bill of information was not served on defendant two full days before the trial. If this ground may be considered as showing an error patent on the face of the record, which may be doubted, still it is not available in a motion in arrest, because the error is one which is waived by going to trial without urging the failure to make the service, and may be made available only by bill of exception to the overruling of an objection to going to trial without the benefit to be derived from the service. It may be said that in this instance such an objection was urged, and that we considered it in the first part of this opinion.
 

 For these reasons, the verdict and the sentence appealed from are affirmed.