182 So. 325

STATE v. TURNER.

No. 34842.

May 30, 1938.

John R. Hunter & Son, of Alexandria, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and A. V. Hundley, Dist. Atty., and Ben F. Thompson, Jr., Asst. Dist. Atty., both of Alexandria, for the State.

PONDER, Justice.

The defendant, S. D. Turner, was convicted of manslaughter and sentenced to serve a term in the State Penitentiary of not less than six years nor more than ten years. From the conviction and sentence the defendant appeals.

Two bills of exceptions were taken by defendant's counsel to the rulings of the court during the course of the trial.

Bill of exception No. 1 was taken to the admission of the testimony of a witness on behalf of the State as to the value of scrap iron in Alexandria in December, 1937. The trial judge in his per curiam states that the witness was called to testify in chief rather than in rebuttal, as contended by defendant's counsel, but, that in either event, it could not effect the relevancy of the testimony. It appears that the defendant's son was employed as a watchman to protect the property of a scrap material company and the defendant a policeman, at the time of the shooting, was with his son in or near a small tent on the opposite side of the street from

the scrap or junk yard in performance of their duties. The deceased, a school teacher, accompanied by a young lady friend in a Ford Coupé, drove along the street where the defendant and his son were situated to a point of approximately 125 or 150 feet. There was evidence produced by the State to the effect that the deceased turned the car around at this point without stopping or turning off the lights and drove back along the street passing the point where the defendant and his son were situated and at the time the car passed the defendant and his son the defendant and his son were standing near the edge of the sidewalk. The young lady in the car testified that the defendant did not step out in the street and wave a flashlight at the car, that the deceased did not come near running over the defendant, and that she heard no command given for the car to stop. She testified that after passing Turner she heard two shots fired but thought it was firecrackers and did not know that the deceased was shot until he told her, and even then she thought he was joking. She testified that the deceased drove to the police station, stopped the car and fell out. There are no notes of evidence in the record, but we are quoting from the judge's per curiam as to what the evidence was. The defendant and his son testified to the effect that after the car passed them it stopped for about ten minutes, the lights were put out, and they heard something placed in the car. They testified that the lights were turned on and as the car approached them the defendant stepped out in front of the car with a flashlight in one hand and his pistol in the other and attempted to stop the car. They also testified that the defendant had to get out of the way to keep the car from running over him and after the car passed the defendant fired two shots at the rear tire. The defendant made a statement shortly after the shooting to the effect that he thought some mischief was being done and told his son that he was going to flag them down and see what they had. The deceased made a dying statement to the effect that he was shot for nothing. The defendant testified that he believed at the time a crime was being committed. It was the State's contention that the material in the junk yard was of such slight value and, in view of the size of the car, the weight and bulk of the material, that the defendant could not have reasonable grounds to believe that a felony had been committed, and in fact if the defendant believed an offense was committed he could not have reasonable grounds to believe that it was more than one of petty larceny, a mere misdemeanor. This evidence would be relevant for the jury to determine whether or not the defendant had reasonable grounds to predicate his belief on. It is well settled that a private citizen or an officer can not take human life in attempting the prevention of a misdemeanor. In the case of State v. Plumlee, 177 La. 687, 149 So. 425, this doctrine was approved (page 429):

"If any point is settled or can be settled, it is that larceny, being a secret crime not attended with force or violence, and especially when the goods taken are of small value, furnishes no warrant to one person for killing another to prevent its

consummation. It has been so held four times in this state in cases involving the stealing of chickens. Bibb v. Hebert, 3 La. Ann. 132; Carmouche v. Bouis, 6 La.Ann. 95, 54 Am.Dec. 558; McCutcheon v. Angelo, 14 La.Ann. 34; Gardiner v. Thibodeau, 14 La.Ann. 732."

Bill of exception No. 2 was taken to the overruling of defendant's motion for a new trial. Counsel for the defense advances four reasons why the court erred in overruling this motion.

■ (1) Counsel for the defendant contends that under the circumstances the defendant had the right to stop the car and make an investigation and to arrest the deceased without a warrant under the provisions of Article 60 of the Code of Criminal Procedure which is to the effect that a peace officer may arrest a person without a warrant when he has reasonable grounds to believe a felony has been committed and reasonable cause to believe that such person has committed it. The point raised here would be one for the jury to determine. There was evidence adduced on the trial to the effect that the defendant did not have reasonable grounds to so believe and to the effect that he did have reasonable grounds to so believe. There is no complaint here that the court did not properly instruct the jury the law applicable thereto.

■ (2) Counsel for the defendant contends that there was no criminal intent and therefore no crime. In support of this contention he cites State v. Howard, 162 La. 719, 111 So. 72, quoting the syllabus, which reads as follows: "No 'crime' can exist without combination of criminal act and criminal intent, or intentional doing of wrongful act." It is contended that the wrongful intent must be established beyond a reasonable doubt by direct or circumstantial evidence. Counsel urges that there is literally no evidence to show wrongful intent or a criminal act and therefore it becomes a question of law which justifies a reversal of the verdict and sentence. In the per curiam of the trial judge it is stated to the effect that the bullet went directly through the back of the car hitting the deceased under the right shoulder blade passing nearly through his body and that this was mute evidence given by the car in which the deceased was riding when viewed by the jury would to a great extent dispute the evidence of the defendant. In the per curiam the statement of the young lady's testimony also refutes this contention. Moreover, it is the well recognized rule that the doer of an unlawful act is conclusively presumed to know the unlawfulness of the act. State v. Irvine, 126 La. 434, 438, 52 So. 567.

In the case of State v. Plumlee, supra, the Court lays down this doctrine:

"Two things must concur in order to justify us in killing another to prevent him from committing some act; first, it must reasonably appear necessary in order to prevent him from committing a crime; and second, the crime to be prevented must be a great crime, and not a petty offense from which no great injury would result to us or others, in body or property. Therefore, if it reasonably appears that the crime can be prevented by any other available means, as by a warning, by a show of force,

or by the use of any force short of killing, the killing would not be justified. And if the crime to be prevented was a petty offense, not likely to result in great injury in body or property to us or others, we would not be justified in killing to prevent it, even if it could not be prevented by any other means."

The doctrine that appears to be recognized in this State as well as in most of the other states is, quoting from Wharton's Criminal Law, 12th Edition, Vol. 1, Section 532:

"Unless it be in cases of riots, it is not lawful for an officer to kill a party accused of misdemeanor, if he. fly from the arrest, though he cannot otherwise be overtaken. Under such circumstances (the deceased only being charged with a misdemeanor), killing him intentionally is murder; but the offense will amount only to manslaughter if it appear that death was not intended."

The case of State v. Howard, supra, cited by counsel, is not contrary to the views herein expressed. In that case the defendant was charged jointly with another of transporting liquor for beverage purposes. The defense was that the defendant did not know there was intoxicating liquor in the car which was being used to transport the liquor. Necessarily, to be guilty he had to have knowledge that liquor was in the car, otherwise the intended knowledge implied in the charge of transporting liquor would not be present.

█ (3) The defendant urges that the lower court erred in refusing a new trial on the ground that one of the jurors made a statement to a responsible citizen on the night before he was called and examined for jury service to this effect: that he sure thought that Turner should be stuck. The notes of testimony show that the witness testified to this effect and that the juror denied having made such statement. The trial judge believed the juror and set forth the reasons in his per curiam why he believed the juror. It is unnecessary to recite the reasons. Under the doctrine laid down in the cases of State v. Shannon, 148 La. 640, 642, 87 So. 500, State v. James, 165 La. 822, 116 So. 199, and State v. Johnson, 149 La. 922, 90 So. 257, the question having resolved itself as to the veracity between the juror and the witness, this Court will not disturb the finding of the lower court.

█ (4) Counsel for the defendant contends that the lower court erred in not granting a new trial for the reason that one F. Bielkiewicz, the father of Luby Bielkiewicz, one of the jurors, and father-in-law of Lee J. Ducote, another juror, stationed himself at a window near the jury box in a position to communicate with the two jurors and remained in this position for about two hours when he was discovered by a deputy sheriff and driven away. The counsel cites in support of his contention Article 394 of the Code of Criminal Procedure which reads:

"From the moment of the acceptance of any juror until the rendition of verdict or the entry of a mistrial, as the case may be, the jurors shall be kept together under the

charge of an officer in such a way as to be secluded from all outside communication; provided that in cases not capital the judge may, in his discretion, permit the jurors to separate at any time before the actual delivery of his charge."

The two jurors and F. Bielkiewicz testified that no communication had been made between them. All the witnesses produced by both sides testified that they saw no communication made between Bielkiewicz and the jurors. While it is true that F. Bielkiewicz was standing by the window near the jury box, yet there is absolutely no evidence to show any wrongful act on his part or on the part of the jurors. The trial judge in his per curiam states that the testimony offered on the trial of the motion completely refutes any attempt to influence the jurors. After reviewing the testimony, we arrive at this same conclusion. State v. Carricut, 157 La. 140, 102 So. 98; State v. Holbrook, 153 La. 1025, 97 So. 27.

Moreover, in the case of State v. Simpson, 184 La. 190, 165 So. 708, it was held to the effect that the granting or refusing of a new trial is left largely to the discretion of the trial judge. Unless it appears that the defendant was prejudiced by the refusal of a new trial the verdict will not be set aside.

For the reasons assigned, the judgment is affirmed.

O'NIELL, C. J., does not take part.

ROGERS, J., absent.